1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Jack W. Fiander, Attorney
Towtnuk Law Offices, Ltd.
Sacred Ground Legal Services, Inc.
5808A Summitview Avenue #93
Yakima, WA 98908
(509) 969-4436 or (509) 961-0096
towtnuklaw@msn.com

Sauk-Suiattle Indian Tribe
Office of Legal Counsel
5318 Chief Brown Lane
Darrington, WA 98241
(360) 436-0139
lweller@sauk-suiattle.com

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In Re: | NO. 2:21-cv-01041 |
| **SAUK-SUIATTLE INDIAN TRIBE**, | **MOTION FOR REMAND** |
| Plaintiff, | Note on Motion Calendar: |
| v. | Friday, August 20, 2021 |
| **CITY OF SEATTLE** and **SEATTLE CITY LIGHT,**  a subdivision of the City of Seattle, | |
| Respondents. | |

MOTION

      COMES NOW the plaintiff and moves the court to remand this cause to the Superior

Court of the State of Washington for Skagit County.

      For the reasons below, the motion should be granted.

MOTION for Remand - 1
2:21-cv-01041

Towtnuk Law Offices, Ltd.
Sacred Ground Legal Services, Inc.
5808A Summitview Avenue, #93
Yakima, WA 98908
(509) 969-4436
towtnuklaw@msn.com

INTRODUCTION

Respondent asserts that the Federal Power Act, as amended, and implementing regulations of the Federal Energy Regulatory Commission applicable to hydroelectric power generating facilities, preempts any requirement that dams situated in what is now the State of Washington may not block fish passage.  As set forth *infra*, this misunderstands plaintiff's position in this litigation.  Nevertheless, plaintiff will pretend for the purposes of respondent's motion that federal preemption is an issue in this case and address such argument.  First, however, the court must address whether the case is properly removed.

ARGUMENT

1. Plaintiff's state court complaint is not properly removable as it asserts claims purely arising under state law and does not conflict with Congress' intent embodied in the plain text of the Federal Power Act.

The district court has removal jurisdiction in any case where it has original jurisdiction.  28 U.S.C. § 1441 (a).  The district court has original federal question jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  However, the fact that federal law may provide a *defense* to a state claim is insufficient to establish federal question *jurisdiction*. *See, e.g.,* Hart v. Bayer Corp., 199 F. 3d 239, 244 (5th Cir. 2000).  In this Circuit, City of Oakland v. BP, No. 18-16663 (Aug. 12, 2020), is instructive.  There, two cities sued five energy companies in state court asserting claims of the common law tort of Nuisance.  The cause was removed to federal court.  Although removal is appropriate where the claims in a complaint are capable of being resolved in federal court without disrupting the federal-state balance approved by Congress (Amended Slip Opinion at 18), the panel concluded that the "well-pleaded complaint" rule precluded removal because plaintiffs' state court complaint failed to raise a substantial federal question.  The panel

Towtnuk Law Offices, Ltd.
Sacred Ground Legal Services, Inc.
5808A Summitview Avenue, #93
Yakima, WA 98908
(509) 969-4436
towtnuklaw@msn.com

buttressed its decision by also concluding that the state law claim was not completely preempted by the Clean Air Act. Id., at pp. 24-25.

In this case, plaintiff's claims arise solely under Washington state law, *i.e.,* claims that the Washington State Constitution and laws prohibit construction of dams within Washington which block fish passage, and claims that Washington's "reception statute" adopting common law as the law of the State also prohibits such blockages. As such, plaintiff's complaint, which the respondent seeks to remove, purely involves only questions of *state* law. As a matter of federalism, principles of comity require that questions arising under state law should be resolved in the first instance by state courts. Even the United States Supreme Court has held that the Court is generally "bound to accept the interpretation of [the State's] law by the highest court of the State." Hortonville Joint Sch. Dist. No. I v. Hortonville Educ. Ass'n, 426 U.S. 482, 488 (1976), *quoted* with approval in Alabama v. Shelton, 535 U.S. 654, 674 (2002).[1]

In this Circuit, because federal jurisdiction "depends solely on the plaintiff's claims for relief and not on anticipated defenses to those claims," ARCO Envtl. Remediation, L.L.C. v. Dep't of Health & Envtl. Quality of Mont., 213 F.3d 1108, 1113 (9th Cir. 2000), "a case may not be removed to federal court on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue," Caterpillar Inc. v.

---

[1] In Ring v. Arizona, involving the state law allocation of functions between judge and jury, the Supreme Court without the slightest hesitation abandoned its prior construction of an Arizona death penalty law on the basis of a subsequent state supreme court opinion stating that the Court's initial understanding was in error: "[W]e recogniz[e] that the Arizona court's construction of the State's own law is authoritative." 536 U.S. 584, 603 (2002).

MOTION for Remand - 3
2:21-cv-01041

Towtnuk Law Offices, Ltd.
Sacred Ground Legal Services, Inc.
5808A Summitview Avenue, #93
Yakima, WA 98908
(509) 969-4436
towtnuklaw@msn.com

Williams, 482 U.S. 386, 393 (1987). Therefore, as the "master of the claim," the plaintiff can generally "avoid federal jurisdiction by exclusive reliance on state law." Id. at 392.

2. Resolution of plaintiff's state-based claims by the state court is not exclusively subject to federal jurisdiction, as the Federal Power Act's savings clause expressly precludes complete federal preemption.

As to whether plaintiff's complaint should be removed to this court because the claims asserted in it are completely federally preempted and exclusively subject to federal jurisdiction, the United States Supreme Court has identified only three federal statutes that completely preempt the application of state law: (1) Section 301 of the Labor-Management Relations Act; (2) Section 502 of the Employee Retirement Income Security Act of 1974; and (3) the usury provisions of the National Bank Act. Beneficial Nat'l Bank v. Anderson, 531 U.S. 1 (2003). The Federal Power Act is not among them.

The Supreme Court has identified two general ways in which federal law can preempt state law. First, federal law can *expressly* preempt state law when a federal statute or regulation contains explicit preemptive language. Second, federal law can *impliedly* preempt state law when Congress's preemptive intent is implicit in the relevant federal law's structure and purpose.

Many federal statutes contain provisions that purport to restrict their preemptive effect. These "savings clauses" make clear that federal law does *not* preempt certain categories of state law, reflecting Congress's recognition of the need for states to "fill a regulatory void" or "enhance protection for affected communities" through supplementary regulation. Sandi Zellmer, *When Congress Goes Unheard: Savings Clauses' Rocky Judicial Reception*, in Preemption Choice: The Theory, Law, and Reality of Federalism's Core Question 144, 146 (William W. Buzbee, ed., 2009). Some courts and commentators have labeled these clauses

MOTION for Remand - 4
2:21-cv-01041

Towtnuk Law Offices, Ltd.
Sacred Ground Legal Services, Inc.
5808A Summitview Avenue, #93
Yakima, WA 98908
(509) 969-4436
towtnuklaw@msn.com

"anti-preemption provisions."  While the case law on anti-preemption provisions is not well-developed, some courts have addressed such provisions in the context of defendants' attempts to remove state law actions to federal court.

Specifically, certain courts have relied on anti-preemption provisions to reject removal arguments premised on the theory that federal law "completely" preempts state laws concerning the relevant subject. In <u>Bernhard v. Whitney National Bank</u>, *supra*.  For example, the U.S. Court of Appeals for the Fifth Circuit relied on an anti-preemption provision in the Electronic Funds Transfer Act to reject a defendant-bank's attempt to remove state law claims involving unauthorized funds transfers to federal court.   523 F.3d 546, 548 (5th Cir. 2008). A number of federal district courts have also adopted similar interpretations of other anti-preemption provisions.  *See* <u>Ervin v. JP Morgan Chase Bank NA</u>, No. GLR-13-2080, 2014 WL 4052895 at *3 (D. Md. Aug. 13, 2014); <u>Palacios v. IndyMac Bank</u>, FSB, No. CV 09-04601, 2009 WL 3838274 at *4 (C.D. Cal. Nov. 13, 2009); <u>Perkins v. Johnson</u>, 551 F. Supp. 2d 1246, 1255 (D. Colo. 2008).

As to whether the Federal Power Act expressly preempts state law, it does not.  Section 27 of the Act of June 10, 1920 expressly provided that:

> Nothing contained in this chapter shall be construed
> as affecting or intending to affect or in any way to
> interfere with the laws of the respective States[.]

Such an exclusionary clause also appears in the 1986 amendments to the Federal Power Act:

> Sec. 17. Savings Provisions.
> (a) In General.—Nothing in this Act shall be construed as authorizing the
>     appropriation of water by any Federal, State, or local agency, Indian tribes, or
>     any other entity or individual.  Nor shall  any provision of this Act--

MOTION for Remand - 5
2:21-cv-01041

Towtnuk Law Offices, Ltd.
Sacred Ground Legal Services, Inc.
5808A Summitview Avenue, #93
Yakima, WA 98908
(509) 969-4436
towtnuklaw@msn.com

(1) Affect the rights or jurisdiction of the United States, the States, Indian tribes, or other entities over waters of any river or stream or over any ground water resource;

(2) Alter, amend, repeal, interpret, modify, or be in conflict with any interstate compacts made by the States;

(3) Alter or establish the respective rights of States, the United States, Indian tribes, or any person with respect to any water or water-related rights;

(4) Alter, expand, or create rights to use transmission facilities owned by the Federal Government;

(5) Alter, amend, repeal, interpret, modify, or be in conflict with, the Treaty rights or other rights of any Indian tribe;

(6) Permit the filing of any competing application in any relicensing proceeding where the time for filing a competing application expired before the enactment of this Act; or

(7) Modify, supersede, or affect the Pacific Northwest Electric Power Planning and Conservation Act.

The Supreme Court has made clear that Congress's purpose is the "ultimate touchstone" of its statutory analysis. The Court's analysis of Congress's purpose has at times been informed by a canon of statutory construction known as the "presumption against preemption," which instructs that federal law should not be read as preempting state law "unless that was the clear and manifest purpose of Congress." Section 3 of the Congress' 1986 amendments to the Federal Power Act clearly demonstrates a Congressional purpose to protect and enhance fish and wildlife:

Section 3. Environmental Considerations in Licensing.

(a) Purposes of License.—Section 4(e) of the Federal Power Act is amended by adding the following at the end thereof:  "In deciding whether to issue any license under this Part for any project, the Commission, in addition to the power and development purposes for which licenses are issued, shall give equal consideration to the purposes of energy conservation, the protection, mitigation of damage to, and enhancement of, fish and wildlife (including related spawning grounds and habitat), the protection of recreational opportunities, and the preservation of other aspects of environmental quality."

16 U.S.C. § 797.  Consequently, not only does the Federal Power Act expressly *not* preempt State laws by virtue of a savings clause, the requirement that dams within Washington not block

MOTION for Remand - 6
2:21-cv-01041

Towtnuk Law Offices, Ltd.
Sacred Ground Legal Services, Inc.
5808A Summitview Avenue, #93
Yakima, WA 98908
(509) 969-4436
towtnuklaw@msn.com

the passage of fish is entirely *consistent* and compatible with Congress purposes of *enhancing* fish and wildlife embodied in that Act.  Consequently, remanding the case so that the state court can interpret the State's own constitution vis-à-vis preserving fish passage creates no irreconcilable conflict with federal law.

The United States Supreme Court has identified two subcategories of implied preemption: "field preemption" and "conflict preemption." *Field preemption* occurs when a pervasive scheme of federal regulation implicitly precludes supplementary state regulation, or where states attempt to regulate a field where there is clearly a dominant federal interest. *Conflict preemption* occurs when simultaneous compliance with both federal and state regulations is impossible ("impossibility preemption"), or when state law poses an obstacle to the accomplishment of federal goals ("obstacle preemption").  Given that all of the over 50 hydroelectric dams in Washington licensed by the Federal Energy Regulatory Commission—except one—*already* have fish passage measures at their dams, it cannot be said that compliance with Washington's fish passage requirement makes it "impossible" to comply with FERC's federal licensing requirements nor impermissibly frustrates Congressional purposes.  There is no issue of implied federal preemption in this case.[2]

The Supreme Court has repeatedly explained that in determining whether (and to what extent) federal law preempts state law, the purpose of Congress is the "ultimate touchstone" of

---

[2] Federal law impliedly preempts state law when it is impossible for regulated parties to comply with both sets of laws ("impossibility preemption").  Fla. Lime & Avocado Growers v. Paul, 373 U.S. 132, 142-43 (1963). Second, federal law impliedly preempts state laws that pose an obstacle to the "full purposes and objectives" of Congress ("obstacle preemption").  Hines v. Davidowitz, 312 U.S. 52, 67 (1941).

Towtnuk Law Offices, Ltd.
Sacred Ground Legal Services, Inc.
5808A Summitview Avenue, #93
Yakima, WA 98908
(509) 969-4436
towtnuklaw@msn.com

its statutory analysis. <u>Wyeth v. Levine</u>, 555 U.S. 555, 565 (2009) (*quoting* <u>Retail Clerks v. Schermerhorn</u>, 375 U.S. 96, 103 (1963)). The Court has further instructed that Congress's intent is discerned "primarily" from a statute's text. <u>Medtronic, Inc. v. Lohr</u>, 518 U.S. 470, 486 (1996) (internal quotation marks and citation omitted). However, the Court has also noted the importance of statutory structure and purpose in determining how Congress intended specific federal regulatory schemes to interact with related state laws. <u>Id</u>. (internal quotation marks and citation omitted).

In evaluating congressional purpose, the Court has at times employed a canon of construction commonly referred to as the "presumption against preemption," which instructs that federal law should not be read to preempt state law "unless that was the clear and manifest purpose of Congress." <u>Rice v. Sante Fe Elevator Corp.</u>, 331 U.S. 218, 230 (1947). The presumption against preemption has traditionally been justified on the grounds that it promotes respect for federalism and state sovereignty. *See* <u>Cipollone v. Liggett Grp., Inc.</u>, 505 U.S. 504, 533 (1992) (Blackmun, J., concurring in part, concurring in the judgment, and dissenting in part). Prominent textualists have expressed suspicion about substantive canons' legitimacy. *See* Amy Coney Barrett, *Substantive Canons and Faithful Agency*, 90 B.U. L. REV. 109, 1 23-24 (2010) ("Substantive canons are in significant tension with textualism . . . insofar as their application can require a judge to adopt something other than the most textually plausible meaning of a statute."); *see also* John F. Manning, Textualism and the Equity of the Statute, 101 COLUM. L. REV. 1, 124 (2001) ("If textualists believe . . . that statutes mean what a reasonable person would conventionally understand them to mean, then applying a less natural . . . interpretation is arguably unfaithful to the legislative instructions contained in the statute."); *and see* Antonin Scalia, *A Matter of Interpretation: Federal Courts and the Law* 28 (1997)

Towtnuk Law Offices, Ltd.
Sacred Ground Legal Services, Inc.
5808A Summitview Avenue, #93
Yakima, WA 98908
(509) 969-4436
towtnuklaw@msn.com

(arguing that "[t]o the honest textualist," substantive canons "are a lot of trouble"); id. at 28-29 (". . . whether these dice-loading rules are bad or good, there is also the question of where the courts get the authority to impose them. Can we really just decree that we will interpret the laws that Congress passes to mean more or less than what they fairly say? I doubt it.").  *See also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 293 (2012) ("[T]he [presumption against preemption] . . . ought not to be applied to the text of an explicit preemption provision . . . The reason is obvious: The presumption is based on an assumption of what Congress, in our federal system, would or should normally desire. But when Congress has explicitly set forth its desire, there is no justification for not taking Congress at its word— *i.e*., giving its words their ordinary, fair meaning.").

In Virginia Uranium, Inc. v. Warren, 587 U.S. _ (2019), Justice Gorsuch authored an opinion joined by Justices Thomas and Kavanaugh in which he emphasized that any evidence of Congress's preemptive purpose must be sought in a statute's text and structure.  (Gorsuch, J., lead opinion) (slip op., at 14-15).

Certainly, there may be discrete areas where the Federal Power Act must prevail over conflicting principles of State law.  However, this is not a case, where a law applicable in the State is irreconcilable with requirements of the Federal Energy Regulatory Commission.  For example, if the Washington Utilities and Transportation Commission adopted rates and regulations applicable to electricity generated by federally licensed power generating facilities that contradicted federal rates such that it became impossible for licensees to comply with both sets of laws, such state regulations might fail.  However, this is not such a case.

Maryland Public Service Commission v. Talen Energy Marketing LLC (U.S. Supreme Ct. No. 14-614), April 9, 2016), is essentially on all fours and is dispositive of respondent's

Towtnuk Law Offices, Ltd.
Sacred Ground Legal Services, Inc.
5808A Summitview Avenue, #93
Yakima, WA 98908
(509) 969-4436
towtnuklaw@msn.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

argument.  There, the energy company successfully asserted that Maryland's power pricing

program impermissibly interfered with FERC's exclusive authority to set interstate wholesale

price rates.  However, in the course of its decision the Supreme Court noted that:

> While Maryland may *retain traditional state authority to regulate the
> development, location, and type of power plants within its borders*…the scope
> of Maryland's power is necessarily limited by FERC's exclusive authority to set
> wholesale energy and capacity prices.

Id. (emphasis added). The Court then held as follows:

> Our holding is limited: We reject Maryland's program only because it disregards
> an interstate wholesale rate required by FERC. We therefore need not and do not
> address the permissibility of various other measures States might employ to
> encourage development of new or clean generation, including tax incentives,
> land grants, direct subsidies, construction of state-owned generation facilities,
> or re-regulation of the energy sector. Nothing in this opinion should be read to
> foreclose Maryland and other States from encouraging production of new or
> clean generation through measures "untethered to a generator's wholesale
> market participation."

In this case, there is a requirement, based upon Congressional enabling acts applicable within

Washington, their incorporation by reference in Washington State's Constitution, and the

state's adoption of common law, that dams within the State provide for fish passage.  Since

doing so is consistent with the purposes of Congress embodied in 1986 amendments to the

Federal Power Act encouraging enhancement of fish and wildlife and the fact that there are

already over 50 hydroelectric generating dams licensed by FERC within the State which have

such fish passage, Washington's requirement cannot be held to be completely preempted by

federal law, given the explicit savings clause which plainly appears in the text of the Federal

Power Act, and the longstanding presumption against preemption.

    In actuality, this is not a case involving Federal Preemption.  Rather, this case involves

the reconciling of two separate acts of Congress peculiarly applicable to the enabling acts of

MOTION for Remand - 10
2:21-cv-01041

Towtnuk Law Offices, Ltd.
Sacred Ground Legal Services, Inc.
5808A Summitview Avenue, #93
Yakima, WA 98908
(509) 969-4436
towtnuklaw@msn.com

Washington and Oregon Territories, which the founders of the State of Washington expressly incorporated into the State's constitution and laws.  The Act of August 14, 1848, 9 Stat. 323, establishing Oregon Territory provides *inter alia* that:

> [T]he rivers and streams of water in said Territory of Oregon in which salmon are found, or to which they resort, shall not be obstructed by dams or otherwise, unless such dams or obstructions are so constructed as to allow salmon to pass freely up and down such rivers and streams.

Id.  A subsequent act of Congress, the Act of March 2, 1853, 10 Stat. 1077, incorporated the above provision by reference:

> [T]he laws now in force in said Territory of Washington, by virtue of the legislation of Congress in reference to the Territory of Oregon, which have been enacted and passed subsequent to the first day of September, eighteen hundred and forty-eight, applicable to the said Territory of Washington, together with the legislative enactments of the Territory of Oregon, enacted and passed prior to the passage of, and not inconsistent with, the provisions of this act, and applicable to the said Territory of Washington, be, and they are hereby, continued in force in said Territory of Washington until they shall be repealed or amended by future legislation.

Id.  Respondent contends that, somehow, these acts of the United States Congress, were repealed by enactment of the Federal Power Act or cannot be reconciled therewith.  The issue in this case is not one of federal preemption.  Rather, this is a case of statutory construction, the question being whether enactment of the Federal Power Act terminated the obligation embodied in the 1848 and 1853 statutes requiring that dams have fish passage.

This issue is not vastly different from the scenario presented in <u>Menominee Tribe v. United States</u>, 391 U.S. 404 (1968). In the absence of an unambiguous statement that Congress intended to repeal prior legislation, federal statutes must be read *in pari materia* and construed so as to be harmonious rather than disharmonious.  It is an unquestionable rule of statutory construction that statutes must be given their plain meaning. [citation]. The Congressional acts

MOTION for Remand - 11
2:21-cv-01041

Towtnuk Law Offices, Ltd.
Sacred Ground Legal Services, Inc.
5808A Summitview Avenue, #93
Yakima, WA 98908
(509) 969-4436
towtnuklaw@msn.com

establishing Washington and Oregon Territories—incorporated by reference in the Washington State Constitution—unambiguous in requiring fish passage at dams on rivers and streams. The later Federal Power Act and its amendments are silent on the matter, although the original act's savings clause preserved applicability of certain state laws and the act's 1986 amendments clearly stated an objective of furthering preservation of fish and wildlife. The only conclusion one can reach from an ordinary reading of these acts is that the general terms of the later acts did not supersede the narrower, more specific, statutory fish passage requirement imposed by Congress within the Pacific Northwest where salmon were known to abound and which were integral to the economy.

CONCLUSION

For the foregoing reasons, principles of federalism and comity, together with the presumption against preemption and longstanding precedents that the federal courts defer to courts of a state interpreting their own constitutions and laws in the first instance, militate in favor of this case being remanded back to the state court.

Doing so is consistent with the anti-preemption savings clause of the Federal Power Act and the application of state and constitutional measures for the protection of fish is entirely consistent with the purposes of Congress embodied in the 1986 amendments to the Federal Power Act favoring conservation and enhancement of fish and wildlife.

Finally, as noted by the Ninth Circuit, remand does not preclude the respondent from raising in state court the same issues it raises in its removal petition as a defense in state court.

MOTION for Remand - 12
2:21-cv-01041

Towtnuk Law Offices, Ltd.
Sacred Ground Legal Services, Inc.
5808A Summitview Avenue, #93
Yakima, WA 98908
(509) 969-4436
towtnuklaw@msn.com

1

2
DATED this __29th__ day of July, 2021.

3
Respectfully submitted,

4
SAUK-SUIATTLE INDIAN TRIBE

5
By:

6
S/Jack W. Fiander

7

8
_____

9
Jack W. Fiander

10
Towtnuk Law Offices, Ltd.
Sacred Ground Legal Services, Inc.
Counsel for Plaintiff

11

12
Certificate of Service

13
The undersigned certifies the foregoing was filed with the Clerk of Court with copies served upon all counsel of record utilizing the Court's CM/ECF system.

14

15
S/Jack W. Fiander

16

17

18

19

20

21

22

23

24

25

26

MOTION for Remand - 13
2:21-cv-01041

Towtnuk Law Offices, Ltd.
Sacred Ground Legal Services, Inc.
5808A Summitview Avenue, #93
Yakima, WA 98908
(509) 969-4436
towtnuklaw@msn.com