Jack W. Fiander, Attorney
Towtnuk Law Offices, Ltd.
Sacred Ground Legal Services, Inc.
5808A Summitview Avenue #93
Yakima, WA 98908
(509) 969-4436 or (509) 961-0096
towtnuklaw@msn.com

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

**SAUK-SUIATTLE INDIAN TRIBE**,

Plaintiff,

v.

**CITY OF SEATTLE** and **SEATTLE CITY LIGHT,** a subdivision of the City of Seattle,

Respondents.

NO. 2:21-cv-01041-BJR

**PLAINTIFF'S RESPONSE TO RESPONDENTS' MOTION TO DISMISS**

INTRODUCTION

Respondents have moved the court to dismiss plaintiff's complaint on various grounds. For the reasons set forth herein such motion should be denied.

ARGUMENT

1. <u>Respondents mischaracterize the basis of plaintiff's claims. That certain territorial acts for Oregon and Washington were repealed in 1873 and 1933 respectively have no bearing on this case, since Washington had by then already incorporated their provisions as matters of Washington state law. Plaintiff's claims do not arise directly under now repealed federal law, rather, the claims are based upon the incorporation by reference of then-existing federal law into state law.</u>

First, respondents argue that certain prohibitions against complete stream blockage requirements in Territorial acts (respondents' exhibits A and B) which were incorporated by

RESPONSE BRIEF - 1
2:21-cv-01041-BJR

Towtnuk Law Offices, Ltd.
Sacred Ground Legal Services, Inc.
5808A Summitview Avenue, #93
Yakima, WA 98908
(509) 969-4436
towtnuklaw@msn.com

1  reference in the Washington State Constitution (Wash. Const. Art. XXVII, § 2) were repealed

2  and consequently no longer in effect.  See ECF No. 11, pp. 5-10.

3  In support of such argument, respondents cite to various statutes which they say

4  rendered such requirements repealed. In particular, respondents rely upon portions of an 1873

5  Congressional Act (ECF 4, 5, Respondents' exhibits C and D) consolidating the general laws

6  of the United States into the Revised Statutes which was later to be denominated the United

7  States Code.  There are two key problems with respondents' reliance upon such enactment.

8  First, the 1873 Act, like the later 1933 act relied on by respondents, was an effort to

9  codify all general laws of the United States, while repealing "obsolete" provisions.  As to the

10  Act establishing Oregon Territory, of course in 1873 its provisions were obsolete and repealed

11  as a law of the United States subject to placement in the Revised Statutes, since Oregon obtained

12  statehood in 1859.  As to any repeal of provisions of the 1853 Washington territorial act, the

13  1873 repeal asserted by respondents expressly *exempted* from repeal provisions of

14  Congressional Acts made prior to 1873 which were not general to the United States but rather

15  were peculiarly local in nature. *See,* §5596, ECF 11-5, p. 3.  The probition of stream blockages

16  in Section 12 of the 1853 Washington Territorial Act was peculiarly local—Washington being

17  the sole jurisdiction of the United States which in 1873 had such a prohibition.

18  Second, Section 1952 of the 1873 Act expressly *preserved* the continuing validity of

19  Section 12, and other sections of the Washington Territorial Act:

20  Sec. 1952.  The laws now in force in the Territory of Washington, by virtue of
21  the legislation of Congress in reference to Oregon, when that State was a
Territory, which were enacted and passed subsequent to the first day of
22  September, eighteen hundred and forty-eight, applicable to the Territory of
Washington, together with the legislative enactments of Oregon, while a
23  Territory, enated and passed prior to March 2, 1853, and not inconsistent with
the provisions of this Title, and appliable to the Territory of Washington, are

RESPONSE BRIEF - 2
2:21-cv-01041-BJR

Towtnuk Law Offices, Ltd.
Sacred Ground Legal Services, Inc.
5808A Summitview Avenue, #93
Yakima, WA 98908
(509) 969-4436
towtnuklaw@msn.com

1
2
      continued in force in that Territory until repealed or amended by future legislation, unless such laws have been repealed or amended by legislation susequent to the second day of March, eighteen hundred and fifty-three.

3 ECF 11-4, p. 20 (Attachment C of Respondents' Motion to Dismiss).  That Act, which had by

4 then already been incorporated by reference into the Washington State Constitution and the

5 State's Enabling Act (Act of Feb. 22, 1889, ch. 180, 25 Stat. 676, 684 [§ 24] [1889], ECF 11-

6 6), was not repealed from the Revised Statutes until <u>1933</u> as respondents correctly state.

7 However, Congress was explicit when it repealed Section 1952 that the obsoleteness of Section

8 1952 was merely because, upon Statehood, Congress lacked the authority to determine the laws

9 of the State of Washington.

10
11
12
      This section provided that certain laws should continue if force in the territory of Washington. When the territory of Washington became one of the States of the Union, Congress lost its power to determine what laws should be in force therein, other than the general body of Federal law applicable to all of the States, and this section became obsolete at that time.

13 Congressional repeal thus had no effect on the applicability of Section 12 of the Washington

14 Territorial Act through its incorporation via state law. Quite to the contrary, Congress expressly

15 recognized the matter as a question of purely state law.  Consequently, the respondents are

16 arguing against themselves.  The restriction against stream blockages, having been adopted as

17 the state law of Washington prior to its decades-later repeal, and Congress having deemed the

18 federal statute unworthy in 1933 of placement in the United States Code since it was obsolete,

19 subject to repeal, and no longer a law of the United States—Washington having decades earlier

20 obtained statehood—this case is one purely of determining the applicability of a Washington

21 *state* law.  Those federal laws incorporated into Washington state law no longer even raise a

22 Federal Question for purpose of invoking this court's  28 U.S.C. § 1331 original jurisdiction.

23

RESPONSE BRIEF - 3
2:21-cv-01041-BJR

Towtnuk Law Offices, Ltd.
Sacred Ground Legal Services, Inc.
5808A Summitview Avenue, #93
Yakima, WA 98908
(509) 969-4436
towtnuklaw@msn.com

That Washington courts deem the provisions of the Washington Territorial Act to remain to be of continued vitality as a matter of Washington state law is demonstrated by <u>State v. Svenson</u>, 104 Wn. 2d 533 (1985). There, the question presented was whether the State of Washington possessed jurisdiction over an offense committed on the Oregon side of the Columbia River in light of § 1950 of the 1853 Washington Territorial Act that provided:

> Sec. 1950.  The State of Oregon and the Territory of Washington shall have concurrent jurisdiction over all offenses committed on the Columbia River, where that river forms a common boundary between the State and Territory.

Act of March 2, 1853, Ch. 90, §12.  The Washington State Supreme Court did not resolve the issue based upon the territorial Act, since the issue was addressed in a Compact between Washington and Oregon.  However, the state's supreme court certainly did not treat the territorial provision as though it was no longer in effect as a law of the state.

An alternative basis for dismissal argued by respondents is that Washington has, on its own, "altered or repealed" the anti-stream blockage provision it constitutionally adopted by enacting an 1889 statute imposing criminal penalties upon those who completely blocked fish-bearing streams:

> Sec. 8. Any person or persons now owning or maintaining, or who shall hereafter construct or maintain any dam or other obstruction across any stream in this state which any food fish are wont to ascend, without providing a suitable fishway or ladder for the fish to pass over such obstruction, shall be deemed guilty of a misdemeanor, and upon conviction thereof, be punished by a fine of not less than one hundred dollars nor more than two hundred fifty dollars, and said dam or obstruction may, in the discretion of the court, be abated as a nuisance.

See, ECF 11-7, pp. 3-4 (Attachment F of Respondents' Motion to Dismiss). Plaintiff fails to see how the Washington legislature's memorialization—or codification—of the anti-stream blockage provision incorporated into the Washington state constitution "repealed" the prohibition such that respondents' continuing to operate in direct violation of it cannot be the

RESPONSE BRIEF - 4
2:21-cv-01041-BJR

Towtnuk Law Offices, Ltd.
Sacred Ground Legal Services, Inc.
5808A Summitview Avenue, #93
Yakima, WA 98908
(509) 969-4436
towtnuklaw@msn.com

basis for a declaratory judgment action in state court. Ordinarily, constructions in violation of state laws are a nuisance *per se*. That there is a good faith basis for a declaratory judgment action in state court is further borne out by current provisions of Washington state law. *See*, RCW 77.15.320 (Unlawful Failure to Provide, Maintain, or Operate Fishway for Dam or Other Obstruction); *see also*, RCW 77.57.030 (Fishways Required in Dams, obstructions).

Furthermore, defendants citation to Section 16 of the 1889 Act does not expressly provide for the repeal of Section 12 of the Washington Territorial Act because that act was not "passed by the legislative assembly of the Territory of Washington." Rather, Section 12 was initially passed by the United States Congress, then incorporated into Washington State law not via the legislative assembly of the Territory of Washington but rather via a special constitutional convention. The legislature could have mirrored the languaged of the Washington State Constitution that referenced all laws "in force in the Territory of Washington" but chose rather to limit the repeal clause to laws passed by the legislative assembly.

2. <u>Plaintiff's assertion of a common law claim does not constitute a "collateral attack on respondent's license".</u>

Nowhere in plaintiff's complaint is it asserted that plaintiff questions the validity of respondents' license to operate a hydroelectric power generating facility. On the contrary, plaintiff's complaint—which for purposes of a motion to dismiss is presumed to be true—asserts that the presence and operation of respondents' dam violates the Washington State Constitution (ECF 1, p. 20, Amended Complaint ¶ 5.A), that the restriction against stream blockages in territorial acts were not repealed by the State's admission to the Union (id., ¶ 5.B) , that complete stream blockages violate Washington common law that was adopted by the Washington legislature by enactment of Section 4.04.010 of the Revised Code of Washington

RESPONSE BRIEF - 5
2:21-cv-01041-BJR

Towtnuk Law Offices, Ltd.
Sacred Ground Legal Services, Inc.
5808A Summitview Avenue, #93
Yakima, WA 98908
(509) 969-4436
towtnuklaw@msn.com

(Amended Complaint ¶ 5.C) ECF 1, p. 20, and that respondents' dam unreasonably interferes with plaintiff's enjoyment of its property thereby constituting a nuisance. Id., ¶ 5.D. The mere fact that respondent's Gorge Dam completely blocks a river does not prevent it from being *licensed* to produce electricity. But the mere fact that a license is issued by another jurisdiction does not prevent the application of state laws which provide *greater* or different restrictions than those imposed by federal law so long as the two are compatible. For example, if Washington law imposed a requirement that, in order to assure public safety and visibility, all hydroelectric dams be painted red, that would not constitute an attack on the facility's licensing. Rather, it would be a mere exercise of the State's police powers to impose greater restrictions on how the dam is built than are imposed as a matter of federal law, so long as that does not make it impossible for the facility to be licensed. Since over 50 dams in Washington already licensed which do not block streams, asking the state court to determine that this dam should not completely block the stream according to Washington state law, in no way attacks the ability of the dam to remain licensed.    The fact that respondent's dam is "licensed" does not preclude it nevertheless constituting a nuisance under Washington common law. According to Washington law,

> [W]hen proper authority authorizes the operation of a lawful business in a certain area, such business does not constitute a nuisance in a legal sense, but it may become such if it is conducted in such an unreasonable manner that it substantially annoys the comfort or repose of others or essentially interferes with the enjoyment of property[.]

Bruskland v. Oak Theater, 42 Wn. 2d 346 (1953).

Despite plaintiff's well-pleaded complaint never challenging the validity of defendant's license, defendant implores the court to "look past a plaintiff's claimed causes of action and

RESPONSE BRIEF - 6
2:21-cv-01041-BJR

Towtnuk Law Offices, Ltd.
Sacred Ground Legal Services, Inc.
5808A Summitview Avenue, #93
Yakima, WA 98908
(509) 969-4436
towtnuklaw@msn.com

artful attempts to avoid the FPA's 'strict jurisdictional limit.'" However, the exclusive jurisdiction provisions of the FPA have not been found to apply to claims under state law.

The Ninth Circuit has found that the jurisdictional prescriptions of the FPA provides for a more specific route of appeal than other federal claims and thus prevent a plaintiff from bringing claims under federal laws with less specific routes of appeal. *see* Cal. Save Our Streams Council, Inc. v. Yuetter, 887 F.2d 908, 911 (9th Cir. 1989). It is clear that in the Ninth Circuit, attempts to bring claims under other federal laws including NEPA, AIRFA, and ESA must give way to the FPA where "the practical effect of the action in district court is an assault on an important ingredient of the FERC license." *Id.* at 912. However, these cases do not provide that the exclusive jurisdiction prescription of the FPA can provide Congress with the authority to create jurisdictional prescriptions under state law claims. The Supreme Court has warned it does not find that Section 313 of the FPA:

> …suggest that the Federal Power Act endowed the Commission of the Court of Appeals with the authority to decide any issues of state law if such law were deemed controlling, or that had the Court of Appeals undertaken to do so, such a determination would have foreclosed re-examination of such a decision in other proceedings.

City of Tacoma v. Taxpayers of Tacoma, 357 U.S. 320, 241 (1958) (J. Harlan, concurring).

### 3. The 1981 Settlement Agreement does not preclude Sauk-Suiattle's Claims

The Agreement applies only to claims that arise "from the effects of the Project, as currently constructed, on fisheries." Here, while plaintiff's claims may ultimately have a fisheries effect the claims do not arise from the effects on fisheries but arise from a violation of state law. The parties to the settlement agreement explicitly reserved that "Nothing in this Agreement precludes the City…from complying with their obligations under…any other laws applicable to the Project."

### 4. The doctrine of primary jurisdiction is inapplicable to this cause.

RESPONSE BRIEF - 7
2:21-cv-01041-BJR

Towtnuk Law Offices, Ltd.
Sacred Ground Legal Services, Inc.
5808A Summitview Avenue, #93
Yakima, WA 98908
(509) 969-4436
towtnuklaw@msn.com

> Primary jurisdiction is a prudential doctrine that permits courts to determine "that an otherwise cognizable claim implicates technical and policy questions that should be addressed in the first instance by the agency with regulatory authority over the relevant industry rather than by the judicial branch." In evaluating primary jurisdiction, [courts] consider "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." Not every case that implicates the expertise of federal agencies warrants invocation of primary jurisdiction. Rather, the doctrine is reserved for a "limited set of circumstances" that "requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency."

Astiana v. Hain Celestial Group, Inc., 783 F.3d 753, 759 (9th Cir. 2015) (internal citations omitted). Plaintiff's claims present an ordinary claim of statutory interpretation that does not require the expertise of FERC. Furthermore, defendant's claim that "FERC has primary jurisdiction over the 'critical issue' of whether the Gorge Dam impairs fish passage." However, the Ninth Circuit has already held that in the context of a 12(b)(6) motion to dismiss there is no "need to resolve an issue" under primary jurisdiction because the court must accept the plaintiff's allegations as true and thus whether the Gorge Dam impairs fish passage must be resolved in plaintiff's favor. *See* Cost Management Services v. Washington Nat. Gas, 99 F.3d 937, 949 (9th Cir. 1996)

    5. <u>The claims raised in plaintiff's complaint are not preempted by the Federal Power Act.</u>

The Supreme Court has identified two ways in which federal law can preempt state law. First, federal law can *expressly* preempt state law when a federal statute or regulation contains explicit preemptive language. Second, federal law can *impliedly* preempt state law when Congress's preemptive intent is implicit in the relevant federal law's structure and purpose.

RESPONSE BRIEF - 8
2:21-cv-01041-BJR

Towtnuk Law Offices, Ltd.
Sacred Ground Legal Services, Inc.
5808A Summitview Avenue, #93
Yakima, WA 98908
(509) 969-4436
towtnuklaw@msn.com

Many federal statutes contain provisions that purport to restrict their preemptive effect. These "savings clauses" make clear that federal law does not preempt certain categories of state law, reflecting Congress's recognition of the need for states to "fill a regulatory void" or "enhance protection for affected communities" through supplementary regulation. Sandi Zellmer, *When Congress Goes Unheard: Savings Clauses' Rocky Judicial Reception*, in Preemption Choice: The Theory, Law, and Reality of Federalism's Core Question 144, 146 (William W. Buzbee, ed., 2009).  Some courts and commentators have labeled these clauses "anti-preemption provisions."  Some courts have addressed such provisions in the context of defendants' attempts to remove state law actions to federal court. Specifically, certain courts have relied on anti-preemption provisions to reject removal arguments premised on the theory that federal law "completely" preempts state laws concerning the relevant subject. In <u>Bernhard v. Whitney National Bank</u>, for example, the U.S. Court of Appeals for the Fifth Circuit relied on an anti-preemption provision in the Electronic Funds Transfer Act to reject a defendant-bank's attempt to remove state law claims involving unauthorized funds transfers to federal court.  523 F.3d 546, 548 (5th Cir. 2008). A number of federal district courts have also adopted similar interpretations of other anti-preemption provisions. *See* <u>Ervin v. JP Morgan Chase Bank NA</u>, No. GLR-13-2080, 2014 WL 4052895 at *3 (D. Md. Aug. 13, 2014); <u>Palacios v. IndyMac Bank</u>, FSB, No. CV 09-04601, 2009 WL 3838274 at *4 (C.D. Cal. Nov. 13, 2009); <u>Perkins v. Johnson</u>, 551 F. Supp. 2d 1246, 1255 (D. Colo. 2008).

Section 27 of the Act of June 10, 1920 expressly provided that:

> Nothing contained in this chapter shall be construed as affecting or intending to affect or in any way to interfere with the laws of the respective States[.]

Such an exclusionary clause also appears in the 1986 amendments to the Federal Power Act:

RESPONSE BRIEF - 9
2:21-cv-01041-BJR

Towtnuk Law Offices, Ltd.
Sacred Ground Legal Services, Inc.
5808A Summitview Avenue, #93
Yakima, WA 98908
(509) 969-4436
towtnuklaw@msn.com

> Sec. 17. Savings Provisions.
> (a) In General.—Nothing in this Act shall be construed as authorizing the appropriation of water by any Federa, State, or local agency, Indian tribes, or any other entity or individual.  Nor shall  any provision of this Act--
> (1) Affect the rights or jurisdiction of the United States, the States, Indian tribes, or other entities over waters of any river or stream or over any ground water resource;
> (2) Alter, amend, repeal, interpret, modify, or be in conflict with any interstate compacts made by the States;
> (3) Alter or establish the respective rights of States, the United States, Indian tribes, or any person with respect to any water or water-related rights;
> (4) Alter, expand, or create rights to use transmission facilities owned by the Federal Government;
> (5) Alter, amend, repeal, interpret, modify, or be in conflict with, the Treaty rights or other rights of any Indian tribe;
> (6) Permit the filing of any competing application in any relicensing proceeding where the time for filing a competing application expired before the enactment of this Act; or
> (7) Modify, supersede, or affect the Pacific Northwest Electric Power Planning and Conservation Act.

The Supreme Court has made clear that Congress's purpose is the "ultimate touchstone" of its statutory analysis. The Court's analysis of Congress's purpose has at times been informed by a canon known as the "presumption against preemption," which instructs that federal law should not be read as preempting state law "unless that was the clear and manifest purpose of Congress."  Section 3 of the Congress' 1986 amendments to the Federal Power Act clearly demonstrates a Congressional purpose to protect and enhance fish and wildlife:

> Section 3. Environmental Considerations in Licensing.
> (a) Purposes of License.—Section 4(e) of the Federal Power Act is amended by adding the following at the end thereof:  "In deciding whether to issue any license under this Part for any project, the Commission, in addition to the power and development purposes for which licenses are issued, shall give equal consideration to the purposes of energy conservation, the protection, mitigation of damage to, and enhancement of, fish and wildlife (including related spawning grounds and habitat), the protection of recreational opportunities, and the preservation of other aspects of environmental quality."

RESPONSE BRIEF - 10
2:21-cv-01041-BJR

Towtnuk Law Offices, Ltd.
Sacred Ground Legal Services, Inc.
5808A Summitview Avenue, #93
Yakima, WA 98908
(509) 969-4436
towtnuklaw@msn.com

16 U.S.C. § 797.  Not only does the Federal Power Act expressly not preempt State laws by virtue of a savings clause, the requirement that dams within Washington not block the passage of fish is entirely consistent and compatible with Congress purposes embodied in that Act.

The United States Supreme Court has identified two subcategories of implied preemption.  *Field preemption* occurs when a pervasive scheme of federal regulation implicitly precludes supplementary state regulation, or where states attempt to regulate a field where there is clearly a dominant federal interest.  *Conflict preemption* occurs when simultaneous compliance with both federal and state regulations is impossible, or when state law poses an obstacle to the accomplishment of federal goals. Given that all of the over 50 hydroelectric dams in Washington licensed by the Federal Energy Regulatory Commission—except one—already have fish passage measures at their dams, it cannot be said that compliance with Washington's fish passage requirement makes it "impossible" to comply with FERC's federal licensing requirements.  There is no issue of implied federal preemption in this case.[1]

In determining whether federal law preempts state law, the purpose of Congress is the "ultimate touchstone" of its statutory analysis. Wyeth v. Levine, 555 U.S. 555, 565 (2009) (*quoting* Retail Clerks v. Schermerhorn, 375 U.S. 96, 103 (1963)). Congress's intent is discerned "primarily" from a statute's text. Medtronic, Inc. v. Lohr, 518 U.S. 470, 486 (1996). The Court has also noted the importance of statutory structure and purpose in determining how Congress intended specific federal regulatory schemes to interact with related state laws. Id.

---

[1] Federal law impliedly preempts state law when it is impossible for regulated parties to comply with both sets of laws. Fla. Lime & Avocado Growers v. Paul, 373 U.S. 132, 142-43 (1963). Federal law impliedly preempts state laws that pose an obstacle to the "full purposes and objectives" of Congress.

RESPONSE BRIEF - 11
2:21-cv-01041-BJR

Towtnuk Law Offices, Ltd.
Sacred Ground Legal Services, Inc.
5808A Summitview Avenue, #93
Yakima, WA 98908
(509) 969-4436
towtnuklaw@msn.com

In evaluating congressional purpose, the Court has at times employed a canon of construction referred to as the "presumption against preemption," which instructs that federal law should not be read to preempt state law "unless that was the clear and manifest purpose of Congress." Rice v. Sante Fe Elevator Corp., 331 U.S. 218, 230 (1947). The presumption against preemption has traditionally been justified on the grounds that it promotes respect for federalism and state sovereignty. *See* Cipollone v. Liggett Grp., Inc., 505 U.S. 504, 533 (1992). Prominent textualists have expressed suspicion about substantive canons' legitimacy. *See* Amy Coney Barrett, *Substantive Canons and Faithful Agency*, 90 B.U. L. REV. 109, 1 23-24 (2010) ("Substantive canons are in significant tension with textualism . . . insofar as their application can require a judge to adopt something other than the most textually plausible meaning of a statute."); *see also* John F. Manning, Textualism and the Equity of the Statute, 101 COLUM. L. REV. 1, 124 (2001) ("If textualists believe . . . that statutes mean what a reasonable person would conventionally understand them to mean, then applying a less natural . . . interpretation is arguably unfaithful to the legislative instructions contained in the statute."); *and see* Antonin Scalia, *A Matter of Interpretation: Federal Courts and the Law* 28 (1997). *See also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 293 (2012) ("[T]he [presumption against preemption] . . . ought not to be applied to the text of an explicit preemption provision . . . there is no justification for not taking Congress at its word—*i.e.*, giving its words their ordinary, fair meaning."). In Virginia Uranium, Inc. v. Warren, 587 U.S. _ (2019), Justice Gorsuch authored an opinion joined by Justices Thomas and Kavanaugh in which he emphasized that any evidence of Congress's preemptive purpose must be sought in a statute's text and structure. (Gorsuch, J., lead opinion) (slip op., at 14-15).

RESPONSE BRIEF - 12
2:21-cv-01041-BJR

Towtnuk Law Offices, Ltd.
Sacred Ground Legal Services, Inc.
5808A Summitview Avenue, #93
Yakima, WA 98908
(509) 969-4436
towtnuklaw@msn.com

Certainly, there may be discrete areas where the Federal Power Act must prevail over conflicting principles of State law. However, this is not a case, where a law applicable in the State is irreconcilable with requirements of the Federal Energy Regulatory Commission. For example, if the Washington Utilities and Transportation Commission adopted rates and regulations applicable to electricity generated by federally licensed power generating facilities that contradicted federal rates such that it became impossible for licensees to comply with both sets of laws, such state regulations might fail. However, this is not such a case.

<u>Maryland Public Service Commission v. Talen Energy Marketing LLC</u> (U.S. Supreme Ct. No. 14-614), April 9, 2016), is essentially on all fours and is dispositive of respondent's argument. There, the energy company successfully asserted that Maryland's power pricing program impermissibly interfered with FERC's exclusive authority to set interstate wholesale price rates. However, in the course of its decision the Supreme Court noted that:

> While Maryland may retain *traditional state authority to regulate the development, location, and type of power plants within its borders*…the scope of Maryland's power is necessarily limited by FERC's exclusive authority to set wholesale energy and capacity prices.

Id. (emphasis added). The Court then held as follows:

> Our holding is limited: We reject Maryland's program only because it disregards an interstate wholesale rate required by FERC. We therefore need not and do not address the permissibility of various other measures States might employ to encourage development of new or clean generation, including tax incentives, land grants, direct subsidies, construction of state-owned generation facilities, or re-regulation of the energy sector. Nothing in this opinion should be read to foreclose Maryland and other States from encouraging production of new or clean generation through measures "untethered to a generator's wholesale market participation."

In this case, there is a requirement, based upon Congressional enabling acts incorporated by Washington and its adoption of common law, that dams within the State not completely block

RESPONSE BRIEF - 13  
2:21-cv-01041-BJR

Towtnuk Law Offices, Ltd.  
Sacred Ground Legal Services, Inc.  
5808A Summitview Avenue, #93  
Yakima, WA 98908  
(509) 969-4436  
towtnuklaw@msn.com

streams unless they are constructed in a manner that provides for fish passage. Doing so is consistent with the purposes of Congress embodied in 1986 amendments to the Federal Power Act. Washington's requirement cannot be held to be preempted by federal law, given the explicit savings clause which plainly appears in the text of the Federal Power Act, and the longstanding presumption against preemption.

There are only "a few areas, involving 'uniquely federal interests,… [that] are so committed by the Constitution and the laws of the United States to federal control that state law is pre-empted and replaced…" <u>Boyle v. United Techs. Corp.</u>, 487 U.S. 500, 504 (1988). The police power of the State of Washington entitles it to prevent anadromous fish from going the way of the passenger pigeon. <u>Puyallup Tribe v. Department of Game</u>, 414 U.S. 44, 49 (1973).

6. <u>Principles of Comity militate in favor of the Court abstaining from entertaining respondents' motion to dismiss, as resolution of the issues raised therein are best resolved by the State court, in determining the applicability of the State's own laws.</u>

The claims in plaintiff's complaint do not demonstrate Federal Questions so substantial as to merit the Court exercising jurisdiction to resolve respondents' motion to dismiss. The complaint seeks a declaratory judgement from a state court regarding the applicability of certain state laws to a public entity within the state. Federal courts do not have original jurisdiction, nor do they acquire jurisdiction on removal, when a federal question is presented by a complaint for a state declaratory judgment. <u>Skelly Oil Co. v. Phillips Petroleum</u> Co., 339 U.S. 667 (1950). Our system of government is said to be one of "dual sovereignty." <u>Murphy v. NCAA</u>, 138 S. Ct. 1461 (2018). The founders believed that "the State governments may be regarded as constituent and essential parts of the federal government; whilst the latter is nowise essential to the operation or organization of the former." J. Madison, Federalist No. 4. As was

RESPONSE BRIEF - 14
2:21-cv-01041-BJR

Towtnuk Law Offices, Ltd.
Sacred Ground Legal Services, Inc.
5808A Summitview Avenue, #93
Yakima, WA 98908
(509) 969-4436
towtnuklaw@msn.com

stated in *Middlesex County Ethics Committee v. Garden State Bar Ass'n,* 457 U.S. 423, 431 (1982):

> The notion of "comity" includes "a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways.

In this case, the Superior Court of the State of Washington for Skagit County is an appropriate forum for determining the applicability of provisions of Washington constitutional, legislative, and common law such that, as a matter of comity, the court should abstain from entertaining respondents' motion in deference to principles of federalism, rather than commandeering the case.  Just as was the case in <u>Gully v. First National Bank in Meridian</u>, 299 U.S. 109 (1936),

> The most that one can say is that a question of federal law is lurking in the background, just as farther in the background there lurks a question of constitutional law, the question of state power in our federal form of government. A dispute so doubtful and conjectural, so far removed from plain necessity, is unavailing to extinguish the jurisdiction of the states.

Id., 299 U.S. at 117.

## CONCLUSION

For the foregoing reasons, respondents' motion to dismiss should be denied.

DATED this __6th___ day of August, 2021.

                                                    Respectfully submitted,

                                                  SAUK-SUIATTLE INDIAN TRIBE
                                                  By:

                                                  S/Jack W. Fiander

                                                  _____
                                                  Jack W. Fiander

RESPONSE BRIEF - 15
2:21-cv-01041-BJR

Towtnuk Law Offices, Ltd.
Sacred Ground Legal Services, Inc.
5808A Summitview Avenue, #93
Yakima, WA 98908
(509) 969-4436
towtnuklaw@msn.com

Certificate of Service

The undersigned certifies the foregoing was filed with the Clerk of Court with copies served upon all counsel of record utilizing the Court's CM/ECF system.

S/Jack W. Fiander

RESPONSE BRIEF - 16
2:21-cv-01041-BJR

Towtnuk Law Offices, Ltd.
Sacred Ground Legal Services, Inc.
5808A Summitview Avenue, #93
Yakima, WA 98908
(509) 969-4436
towtnuklaw@msn.com