The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

In Re:

SAUK-SUIATTLE INDIAN TRIBE,

        Plaintiff,

  v.

CITY OF SEATTLE and SEATTLE CITY LIGHT, a subdivision of the City of Seattle,

        Respondents.

Case No. 2:21-cv-01014 (BJR)

**RESPONDENTS' REPLY IN SUPPORT OF MOTION FOR DISMISSAL UNDER FED. R. CIV. P. 12(b)(1) AND 12(b)(6)**

Respondents City of Seattle and Seattle City Light (together "City Light") <u>agree</u> with Plaintiff Sauk-Suiattle Indian Tribe ("Sauk-Suiattle") that fish passage at Gorge Dam in the Skagit River Hydroelectric Project (Federal Energy Regulatory Commission ("FERC") Project No. 553) (the "Project") presents a very important topic. Indeed, fish passage at the Project's three dams is a central topic in the Project's ongoing FERC relicensing proceeding. With FERC's approval and the input of National Marine Fisheries Service, other federal and state agencies, and other affected tribes, City Light is implementing a multi-year study of fish passage in the relicensing proceeding.[1] This study, along with other information, will inform

---

[1] *See* Dkt. No. 12-6 pp. A-1, B-27–28 (Ex. 6 to City Light's Request for Judicial Notice). Sauk-Suiattle did not object to City Light's Request for Judicial Notice.

RESPONDENTS' REPLY IN SUPPORT OF MOTION TO DISMISS     -1-
Case No. 2:21-cv-01014 (BJR)

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

whether or not fish passage measures will be required in the next FERC license. Sauk-Suiattle will have ample opportunity to participate in the important decisions about fish passage that will be made during the ongoing FERC relicensing proceeding.

More salient to the Court, however, is that this action should be dismissed under Rules 12(b)(6) and 12(b)(1) because Sauk-Suiattle failed to assert a cognizable legal theory for relief and the Court lacks jurisdiction. First, the Congressional Acts that Sauk-Suiattle claim require fish passage are no longer in force and are not otherwise applicable to Gorge Dam. Second, Sauk-Suiattle had an opportunity to address fish passage issues during FERC's licensing process in the 1990s and chose not to appeal City Light's current license, thereby establishing this Court's lack of subject matter jurisdiction. Third, Sauk-Suiattle is currently involved with City Light's ongoing relicensing proceedings at FERC, and FERC should be allowed to exercise primary jurisdiction over the question of fish passage at Gorge Dam. Finally, the Federal Power Act ("FPA") preempts Sauk-Suiattle's Washington common law and tort law claims.[2]

**A.  Sauk-Suiattle's Arguments Regarding the Establishing Acts Do Not Present a Cognizable Legal Theory for Relief.**

Sauk-Suiattle's basis for relief is fundamentally flawed. First, the prohibition on dams without fishways from the 1848 congressional act forming the Territory of Oregon (the "1848 Establishing Act") was not incorporated into the laws of the Territory of Washington, and subsequently into the laws of the state of Washington. On this basis alone, Sauk-Suiattle's Establishing Acts arguments fail and should be dismissed. Second, Sauk-Suiattle concedes in its Response Brief that the Establishing Acts were repealed by Congress (Resp. p. 3) and—contrary to its Amended Complaint—asserts that this case rests purely on state law, not federal law. If there is no federal law issue, there can be no Supremacy Clause violation (Dkt.

---

[2] This brief does not address Sauk-Suiattle's arguments regarding the 1981 Settlement Agreement (Dkt. No. 13 p. 7 ("Resp.")) because City Light did not argue that provisions in any of the parties' settlement agreements over the decades are a basis for dismissal. City Light reserves any claims it has that Sauk-Suiattle breached the parties' settlement agreements.

RESPONDENTS' REPLY IN SUPPORT OF
MOTION TO DISMISS     -2-
Case No. 2:21-cv-01014 (BJR)

No. 5 ("Am. Compl.") ¶¶ 5.B., 6.B.), and Sauk-Suiattle's arguments based on the Establishing Acts and U.S. Constitution must be dismissed. Lastly, even if this Court ignores the plain text of Section 12 of the 1853 act establishing the Territory of Washington (the "1853 Establishing Act") and assumes that the 1848 Establishing Act prohibition *did* become law in the Territory of Washington, and was thereafter incorporated into state law, Sauk-Suiattle's Establishing Acts arguments still provide no cognizable legal theory for relief. The prohibition ceased to have any legal significance when it was altered (i.e., amended) by the Washington Legislature in 1890.

### 1. The Prohibition on Dams Without Fishways Was Not Incorporated Into the Law of the Territory of Washington or Washington State.

As City Light explained in its Motion to Dismiss, the prohibition on dams without fishways was not incorporated into the 1853 Establishing Act. *See* Dkt. No. 11 ("Mot. to Dismiss") p. 7, n.10. Section 12 of the 1853 Establishing Act incorporated only those laws applicable in the Territory of Washington that were enacted *subsequent* to September 1, 1848.[3] The 1848 Establishing Act was not enacted "subsequent to" September 1, 1848; it was enacted on August 14, 1848.[4] Thus, the prohibition on dams without fishways contained in Section 12 of the 1848 Establishing Act was not incorporated into the laws of the Territory of Washington via Section 12 of the 1853 Establishing Act, which means the prohibition was also not incorporated into the laws of the state of Washington upon statehood in 1889. *See* Act of Feb. 22, 1889, ch. 180, 25 Stat. 676, 683–84 (§ 24) (1889).[5]

Congress knew how to reference and incorporate the 1848 Establishing Act into the 1853 Establishing Act, and did so elsewhere. *See, e.g.*, 1853 Establishing Act, § 15 (all pending lawsuits and proceedings in the Territory of Oregon, which was formed "by act of Congress, entitled, 'An act to establish the territorial government of Oregon,' approved

---

[3] *See* Dkt. No. 11-3 p. 177 (Att. B to City Light's Motion to Dismiss).
[4] *See* Dkt. No. 11-2 pp. 323, 331 (Att. A to City Light's Motion to Dismiss).
[5] *See* Dkt. No. 11-6 pp. 683–84 (Att. E to City Light's Motion to Dismiss).

RESPONDENTS' REPLY IN SUPPORT OF MOTION TO DISMISS   -3-
Case No. 2:21-cv-01014 (BJR)

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

August fourteen, one thousand eight hundred and forty-eight[,]" were to be transferred to courts within the Territory of Washington). "It is a well-established canon of statutory interpretation that the use of different words or terms within a statute demonstrates that Congress intended to convey a different meaning for those words. … Congress's explicit decision to use one word over another in drafting a statute is material." *SEC v. McCarthy*, 322 F.3d 650, 656 (9th Cir. 2003) (internal citations omitted).

The plain text of these congressional acts belies Sauk-Suiattle's allegations. All of Sauk-Suiattle's arguments that rely on the Establishing Acts should be dismissed under Rule 12(b)(6) because the 1848 Establishing Act prohibition was never incorporated into the laws of the Territory of Washington or the state of Washington.

### 2. Sauk-Suiattle's Supremacy Clause Argument Also Does Not Provide Grounds for Relief.

Sauk-Suiattle's Amended Complaint alleges that the Establishing Acts were not repealed by Congress and the presence and operation of the Project without fishways violates the Supremacy Clause of the U.S. Constitution. Am. Compl. ¶ 5.B. City Light's Motion to Dismiss demonstrated that Sauk-Suiattle is wrong: Congress implicitly repealed the prohibition on dams without fishways in 1920 via Section 29 of the FPA and explicitly repealed it in 1933 through repeal of obsolete sections of the Revised Statutes. *See* Mot. to Dismiss 8–10. Thus, the Project does not violate the Supremacy Clause. Now, in its Response Brief, Sauk-Suiattle tries to walk back from its own Amended Complaint and instead posits that the fact that "certain territorial acts for Oregon and Washington were repealed" by Congress[6] "[has] no bearing on this case" and that "this case is one purely of determining the applicability of a Washington *state* law." Resp. pp. 1, 3 (emphasis in original).

---

[6] Sauk-Suiattle also tries to argue in the alternative that Congress did not repeal the Establishing Acts provisions because they were "peculiarly local in nature" and therefore exempt from the repeal provisions of the 1873 Revised Statutes. *See* Resp. p. 2. This unsubstantiated assertion is incorrect and immaterial. Case law (which Sauk-Suiattle does not cite) establishes that an act that is specific to a particular locality (e.g., a territory) is not

RESPONDENTS' REPLY IN SUPPORT OF MOTION TO DISMISS   -4-
Case No. 2:21-cv-01014 (BJR)

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

If federal law (and now repealed federal law, at best) is inapplicable to Sauk-Suiattle's claims, then the Supremacy Clause can provide no grounds for relief. Sauk-Suiattle's Response Brief directly contradicts its Amended Complaint, which counsel for Sauk-Suiattle refused to amend after conferring with counsel for City Light. Mot. to Dismiss p. 15. Clearly there is no Supremacy Clause violation, as City Light has demonstrated, and now Sauk-Suiattle has admitted, as Congress repealed the federal laws in question. Sauk-Suiattle's Supremacy Clause arguments must be dismissed under Rule 12(b)(6).

### 3. The Prohibition on Dams Without Fishways Ceased to Have Any Legal Effect in 1890 when the Washington Legislature Altered the Prohibition.

Assuming, arguendo, that this is purely a question of state law and that the 1848 Establishing Act's prohibition was incorporated into the laws of the state of Washington through either the Enabling Act[7] or Washington Constitution Article XXVII, Section 2, prior to its repeal by Congress (Resp. p. 3), Sauk-Suiattle's claims still fail and must be dismissed.

The Washington Constitution provided that "[a]ll laws now in force in the Territory of Washington … shall remain in force *until they* expire by their own limitation, or *are altered or repealed by the legislature*[.]" Wash. Const. Art. XXVII, § 2 (emphasis added). Thus, the Washington Constitution incorporated all laws of the Territory of Washington into state law (which, according to Sauk-Suiattle (and disputed by City Light), included the prohibition against dams without fishways), and provided that such laws would remain in force "until they … are altered *or* repealed by the legislature[.]" *Id*. (emphasis added). In 1890, the Washington Legislature "altered" the prohibition on dams without fishways via Section 8 of the 1890 act to "protect salmon and other food fishes."[8] Thus, regardless of whether the

---

"local" for the purposes of the repeal provision in Section 5596 of the 1873 Revised Statutes if the act applies to all persons of the United States. *See, e.g.*, *Forty-Three Gallons of Cognac Brandy*, 11 F. 47, 48–49 (D. Minn. 1882). Regardless, Congress implicitly repealed the prohibition via Section 29 of the FPA. *See* Mot. to Dismiss pp. 9–10.

[7] *See* Dkt. No. 11-6 (Att. E to City Light's Motion to Dismiss).
[8] *See* Dkt. No. 11-7 p. 106 (Att. F to City Light's Motion to Dismiss).

RESPONDENTS' REPLY IN SUPPORT OF MOTION TO DISMISS    -5-
Case No. 2:21-cv-01014 (BJR)

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

prohibition was passed by Congress or the "legislative assembly of the Territory of Washington" and subject to repeal under Section 16 of the 1890 Act as Sauk-Suiattle disputes, *see* Resp. p. 5, the prohibition ceased to have any legal effect as a state law when the Washington Legislature <u>altered</u> the prohibition via Section 8 of the 1890 Act. Through Section 8,[9] the Washington Legislature established the circumstances under which a dam without fish passage might be a nuisance, and as explained in Section I.D., *infra*, that tort law argument is preempted by the FPA. The Washington Constitution provides that the territorial laws were to remain in force until they were altered or repealed by the legislature, which the legislature first did in 1890 and has continued to do over the years. *See, e.g.*, RCW 77.57.030.

For the foregoing reasons, the Establishing Acts provide no cognizable legal theory for relief under federal or state law, and Sauk-Suiattle's arguments must be dismissed.

### B. This Court Lacks Subject Matter Jurisdiction Over Sauk-Suiattle's Collateral Attack on City Light's FERC License.

Sauk-Suiattle incorrectly states that "the exclusive jurisdiction provisions of the FPA have not been found to apply to claims under state law" (Resp. p. 7) to argue that this Court may entertain Sauk-Suiattle's collateral attack on City Light's current FERC license. Sauk-Suiattle's effort to distinguish this case from *California Save Our Streams Council, Inc. v. Yuetter* is unpersuasive. Resp. p. 7. While the Ninth Circuit held in *Yuetter* that claims brought pursuant to federal environmental laws were a collateral attack on a FERC license, and therefore the district court lacked jurisdiction over the case based on the FPA's exclusive jurisdiction provisions, that holding does not preclude the same logic from being applied to state law claims that mount a collateral attack on a FERC license. This Court reached this exact conclusion in *Carrington v. City of Tacoma*, holding that the plaintiffs' state law negligence claims were an "impermissible collateral attack … seeking state tort damages for [the utility's] operations in compliance with its FERC license" and noting that plaintiffs "did

---

[9] *See* Dkt. No. 11-7 pp. 107–08 (Att. F to City Light's Motion to Dismiss).

RESPONDENTS' REPLY IN SUPPORT OF
MOTION TO DISMISS     -6-
Case No. 2:21-cv-01014 (BJR)

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

not challenge the terms of [the utility's] FERC license at any time during the [prior] relicensing process." 276 F. Supp. 3d 1035, 1044–45 (W.D. Wash. 2017).

Sauk-Suiattle's citation to Justice Harlan's concurrence in *City of Tacoma v. Taxpayers of Tacoma* (Resp. p. 7) also is unpersuasive. The concurrence left intact the Court's holding that the Washington courts could not consider a collateral state law attack on Tacoma's authority and obligation to comply with its FERC license. 357 U.S. 320, 337–40 (1958). This holding applies directly to this case, where Sauk-Suiattle advances state law arguments regarding fish passage to challenge City Light's authority and obligation to comply with FERC license provisions requiring it to operate Gorge Dam without fish passage.[10] Sauk-Suiattle participated in the 1990s licensing proceedings, entered into a settlement in those proceedings,[11] and did not appeal City Light's 1995 license pursuant to Section 313 of the FPA (16 U.S.C. § 825l). Sauk-Suiattle cannot now challenge City Light's authority and obligation to comply with that FERC license because "all objections to the [FERC] order, to the license it directs to be issued, and to the legal competence of the licensee to execute its terms, must be made in the Court of Appeals or not at all." *City of Tacoma*, 357 U.S. at 336.

### C. FERC Has Primary Jurisdiction Over the Issues in this Case.

Sauk-Suiattle argues against FERC's primary jurisdiction by asserting that the issue is "an ordinary claim of statutory interpretation that does not require the expertise of FERC." Resp. p. 8. Sauk-Suiattle is mistaken. Sauk-Suiattle's Amended Complaint alleges that the "presence and operation of the [Project]" violates state and federal laws regarding fish passage. Am. Compl. ¶¶ 5.A., 5.B., 5.C., 5.D. Therefore, the question necessarily presented by Sauk-Suiattle's claims for relief is: should this federally-licensed hydropower project provide fish passage? This is not a simple question of statutory interpretation; it is a complex issue currently before FERC in the Project relicensing proceedings.

---

[10] *See* Dkt. No. 12-4 pp. 17–18 of FERC License Order (Ex. 4 to City Light's Request for Judicial Notice).
[11] *See* Dkt. No. 12-4 pp. 21–22 of attached Final Environmental Assessment.

RESPONDENTS' REPLY IN SUPPORT OF
MOTION TO DISMISS     -7-
Case No. 2:21-cv-01014 (BJR)

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

The doctrine of primary jurisdiction applies when: "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory scheme that (4) requires expertise or uniformity in administration." *Davel Commc'ns, Inc. v. Qwest Corp.*, 460 F.3d 1075, 1086–87 (9th Cir. 2006) (internal citation omitted). Here, all of the requirements are met to find that FERC holds primary jurisdiction over the issues in this case.

Whether or not fish passage should be required at a federally-licensed hydropower facility has been placed squarely within FERC's purview by Section 18 of the FPA. *See* 16 U.S.C. § 811 (requiring FERC to order a licensee to construct, maintain, and operate fishways if prescribed by the Secretary of Commerce or Interior). FERC must retain exclusive control over fish passage requirements at federally-licensed facilities to avoid implementing inconsistent regulatory requirements across hydrologically connected systems. *See, e.g., Carrington,* 276 F. Supp. 3d at 1041 (allowing state law to supplant FERC's exclusive control of dam operations would subject dam operators to contradictory standards). Fish passage at the Project as currently licensed, and whether it was necessary, was discussed extensively in the Settlement Agreements to which Sauk-Suiattle is a party.[12] Whether fish passage should be required in the future is a complex and nuanced issue, not reducible to a conclusory inference and is, in fact, again in dispute and subject to the primary jurisdiction of FERC.

### D. The FPA Preempts Sauk-Suiattle's State Law Claims.

Courts, including the U.S. Supreme Court, have held that state laws imposing stricter requirements on a licensee than those imposed by FERC under the FPA are preempted. *See* Mot. to Dismiss p. 14. Any fishway requirements in Washington common law or tort law are both field and conflict preempted by the FPA's provisions that provide FERC exclusive

---

[12] *See, e.g.,* Dkt. No. 12-5 p. 2 (Ex. 5 to City Light's Request for Judicial Notice) ("This Agreement resolves all issues *related to the effects on fisheries resources* of the Project[.]") (emphasis added).

RESPONDENTS' REPLY IN SUPPORT OF
MOTION TO DISMISS    -8-
Case No. 2:21-cv-01014 (BJR)

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

jurisdiction over licensing of the Project, including the authority to order fishways and ensure adequate protection, mitigation, and enhancement of fish. 16 U.S.C. §§ 803(a)(1), 811; *see California v. FERC*, 495 U.S. 490, 506–07 (1990) (holding that California's significantly higher minimum stream flow requirements would conflict with the "balance embodied" in FERC's licensing decision; "allowing California to impose the challenged requirements would be contrary to congressional intent regarding the Commission's licensing authority and would 'constitute a veto of the project that was approved and licensed by FERC'").[13]  Sauk-Suiattle's unsupported allegation that "all of the over 50 hydroelectric dams" in Washington licensed by FERC have fish passage measures has no bearing on whether City Light can install fish passage as a matter of state law while also complying with its FERC license and the FPA. Resp. p. 11.  Sauk-Suiattle's state common law and tort arguments are both field and conflicted preempted by the FPA. *See* 16 U.S.C. §§ 803(a)(1), 811.

Furthermore, Sauk-Suiattle's assertion that Section 27 of the FPA saves its state law claims from preemption (Resp. p. 9) is wrong. Sauk-Suiattle conveniently omitted the portion of Section 27 of the FPA that limits the scope of the savings clause to a narrow set of state laws "relating to the control, appropriation, use, or distribution of water used in irrigation or for municipal or other uses, or any vested rights acquired therein." 16 U.S.C. § 821. The U.S. Supreme Court has interpreted this provision to mean that the savings clause is strictly limited to state laws allocating proprietary rights in water. *First Iowa Hydro-Elec. Co-op. v. Fed. Power Comm'n*, 328 U.S. 152, 175–76 (1946); *see also Carrington*, 276 F. Supp. 3d at 1044.

---

[13] Sauk-Suiattle is wrong to assert that *Hughes v. Talen Energy Marketing, LLC*, 136 S.Ct. 1288 (2016), is "on all fours and is dispositive of respondent's argument." Resp. p. 13. The Court in *Hughes* held that Part II of the FPA, 18 U.S.C. §§ 824 *et seq*., which authorizes FERC to set rates for interstate sales of power, preempted state law. In *dicta,* the Court noted states generally may use non-price measures to promote clean energy. 136 S.Ct. at 1299. The decision never mentions hydropower or considers whether a state measure that is flatly contrary to FERC's exclusive authority over hydropower licensing under Part I of the FPA, 18 U.S.C. §§ 791–823(g), could survive preemption analysis.  *Carrington* and other decisions under Part I demonstrate that many state laws are indeed subject to preemption under Part I of the FPA.

RESPONDENTS' REPLY IN SUPPORT OF MOTION TO DISMISS    -9-
Case No. 2:21-cv-01014 (BJR)

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

1  Sauk-Suiattle's claims do not involve proprietary rights in water, and are therefore not saved
2  by Section 27 of the FPA and are preempted.[14]

3  The "FPA establishes a broad and paramount federal regulatory role" over
4  hydropower development. *See California*, 495 U.S. at 499; *see also First Iowa.*, 328 U.S. at
5  180–82. Following *California* and *First Iowa*, this Court held that the FPA both field and
6  conflict preempted claims brought under state law that Tacoma's flow releases in accordance
7  with its FERC license caused flooding and property damage. *See Carrington*, 276 F. Supp. 3d
8  at 1044–45. For the same reasons, any requirements in Washington common law or tort law
9  regarding fish passage are preempted by the FPA's provisions that provide FERC exclusive
10 jurisdiction over licensing of the Project, including the authority to order fishways and ensure
11 adequate protection, mitigation, and enhancement of fish. 16 U.S.C. §§ 803(a)(1), 811.

12 DATED this 19th day of August, 2021.

K&L GATES LLP

By:   s/ Elizabeth Thomas
      Elizabeth Thomas, WSBA # 11544
      Kari L. Vander Stoep, WSBA # 35923
925 Fourth Avenue, Suite 2900
Seattle, WA  98104
Phone:  (206) 623-7580
E-mail:     Liz.Thomas@klgates.com
            Kari.Vanderstoep@klgates.com

Attorneys for Respondents

---

[14] Sauk-Suiattle also seems to argue that the Savings Provision in Section 17 of the 1986 amendments to the FPA preserves its state common law and tort law arguments from field and conflict preemption. Resp. pp. 9–10; *see also* 16 U.S.C. § 797 note. Sauk-Suiattle's reliance on this provision is flawed. A plain reading reveals that none of the provisions in Section 17 preserve the rights of anyone to rely on state common law or tort law to override a FERC license and demand fish passage at a FERC-licensed dam.  Instead, the provisions in Section 17 preserve (1) certain authorities over proprietary rights in water (similar to Section 27), (2) interstate compacts, (3) rights pertaining to federal transmission facilities, (4) treaty rights, (5) FERC's competing application requirements for new hydropower licenses, and (6) the Pacific Northwest Electric Power Planning and Conservation Act.

RESPONDENTS' REPLY IN SUPPORT OF
MOTION TO DISMISS     -10-
Case No. 2:21-cv-01014 (BJR)

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

# CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of August, 2021, the foregoing was electronically filed with the Clerk of the Court using the Court's electronic filing system, which will send notification of such filing to the following:

Jack W. Fiander
Towtnuk Law Offices Ltd.
Sacred Ground Legal Services, Inc.
5808A Summitview Avenue #93
Yakima, WA 98908
(509) 969-4436 or (509) 961-0096
towtnuklaw@msn.com

Kehl Van Winkle
Maglio Christopher & Toale, P.A.
1325 Fourth Avenue, Suite 1730
Seattle, WA 98101
(888) 952-5242
kvanwinkle@mctlaw.com

Altom M. Maglio
Maglio Christopher & Toale, P.A.
1605 Main Street, Suite 710
Sarasota, FL 34236
(888) 952-5242
amm@mctlaw.com

DATED this 19th day of August, 2021 at Seattle, Washington.

By s/Dawnelle Patterson
Dawnelle Patterson, Practice Assistant
Dawnelle.patterson@klgates.com

*Certificate of Service*
Case No. 2:21-cv-01014 (BJR)

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

505037186.14