The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SAUK-SUIATTLE INDIAN TRIBE,
Plaintiff,

v.

CITY OF SEATTLE and SEATTLE CITY LIGHT, a subdivision of the City of Seattle,
Defendants.

NO. 2:21-cv-1014

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

## I.  INTRODUCTION

This matter comes before the Court on a Motion to Dismiss filed by Defendants City of Seattle and Seattle City Light.[1] Plaintiff, the Sauk-Suiattle Indian Tribe, filed a complaint seeking a declaration that the "presence and operation" of the Gorge Dam, a hydroelectric dam owned and operated by Defendants, violate the constitutions of Washington and the United States, in addition to state and federal law, by blocking the passage of fish. For the following reasons, the Court concludes that it lacks jurisdiction over Plaintiff's claims and that Defendants' Motion to Dismiss must therefore be granted.

---

[1] Seattle City Light is not a distinct legal entity. Nevertheless, the Court will refer to City Light and the City of Seattle, collectively, as "Defendants."

ORDER GRANTING MOTION
TO DISMISS

- 1

## II. BACKGROUND

### A. The Gorge Dam and Plaintiff's Claims for Relief

The Gorge Dam in Newhalem, Washington is one of three dams constituting the Skagit River Hydroelectric Project (the "Project"), which is owned and operated by Defendants. Am. Comp., ¶ 4.A, Dkt. No. 1, Ex. A. That Project, which provides electricity to residents of the City of Seattle, is located within the Ross Lake Recreational Area in North-Central Washington, and is bounded by the North Cascades National Park, and the Mount Baker-Snoqualmie, Okanogan, and Wenatchee National Forests. *See* Order Accepting Settlement Agreement, Issuing New License, and Terminating Proceeding ("Relicensing Order"), 71 FERC ¶ 61159, 61528 (May 16, 1995). The Gorge Dam is the furthest downriver of the three dams, and as constructed, "blocks fish passage within the Skagit River from the area below to the area above such dam." Am. Compl., ¶¶ 4.B, 4.C.

### B. The Skagit River Hydroelectric Project and FERC's 1995 Relicensing Order

Construction of the Skagit River Project was completed in the early 1920s, and in 1927, the Federal Power Commission ("FPC") issued Defendants a 50-year license to operate the Project. *See* Relicensing Order, 71 FERC at 61,552.[2] In 1977, Defendants applied to the Federal Energy Regulatory Commission ("FERC" or the "Commission"), the FPC's successor agency, for a new license. *Id.* at 61,548, n. 1. The following year, FERC instituted a proceeding to study the impact of the Project's "flow regime" on the Skagit River fisheries resource. *Id.* at 61,527. Nearly two decades later, in 1995, FERC issued the "Order Accepting Settlement Agreement, Issuing New License, and Terminating Proceeding." *Id.* That Relicensing Order, as its title indicates,

---

[2] Subsequent to expiration of that license in 1977 until issuance of the new license in 1995, FERC issued annual licenses under the terms and conditions of the original license. Relicensing Order, 71 FERC at 61,159, n. 1.

ORDER GRANTING MOTION
TO DISMISS

- 2

terminated the fisheries study proceeding and accepted the settlement agreements between Defendants and multiple intervenors in the proceeding, including Plaintiff.[3] The Relicensing Order incorporated provisions of those agreements into issuance of a new license, which authorized operation of the Project for another 30 years As outlined in the Relicensing Order, those settlement agreements—ten in all—concerned myriad aspects of the Project, and "purport[ed] to resolve all issues related to project operation, fisheries, wildlife, recreation and aesthetics, erosion control, archaeological and historic resources, and traditional cultural properties." *Id*. at 61,527.

Particularly relevant to this lawsuit, the Relicensing Order approved a "Fisheries Settlement Agreement" joined by Defendants and several of the intervenors, including Plaintiff, which agreement "establishe[d] Seattle's obligations relating to fishery resources affected by the project, including numerous provisions to protect resident and migratory fish species." *Id*. at 61,530. To that end, the settlement incorporated an "Anadromous Fish Flow Plan," which was "intended to mitigate the impacts of daily and seasonal downstream fluctuations." *Id*. The flow plan prescribed "a filling schedule for Ross Lake reservoir, flows downstream of Gorge powerhouse, flow releases and limits to protect salmon and steelhead spawning and development, requirements for dry water years, advance scheduling of hourly generation," and other measures. *Id*.

The settlement agreement acknowledged, however, that:

even with the complete implementation of the Anadromous Fish Flow Plan, some

---

[3] Intervenors in the proceeding, in addition to Plaintiff, included the Swinomish Indian Tribal Community and the Upper Skagit Tribe; the National Marine Fisheries Service; the Washington State Department of Game; the North Cascades Conservation Council; the Washington State Department of Fisheries; the Secretary of the Interior, National Park Service and Fish and Wildlife Service; the Department of Ecology, Washington State; and the U.S. Department of Agriculture, Forest Service. Relicensing Order, 71 FERC at 61,528–29.

ORDER GRANTING MOTION
TO DISMISS

- 3

> level of these impacts would continue to occur. Fish will still be exposed to daily and seasonal flow fluctuations, which will result in the continuation of chronic fry stranding at a reduced, unknown level. In addition, the configuration and operation of the project has rendered some formerly productive fish habitat inaccessible.

*Id*. In addition to the flow plan, therefore, the fisheries settlement also incorporated an "Anadromous and Resident Non-flow Plan," which was "specifically intended to address these residual impacts and habitat losses." *Id*. That plan provided that "[a]dditional nonflow measures will be implemented for enhanced steelhead production, chinook salmon research, fish habitat development, sediment reduction, and trout protection and production." *Id*. at 61532. It was anticipated that "Seattle's expenditures to accomplish the nonflow plan [would] total $6,320,000 over the term of the license." *Id*. Conditions of both the flow plan and the non-flow plan were incorporated, through the Fisheries Settlement Agreement, into the 1995 license.

Neither the Department of the Interior nor the Department of Commerce, as authorized under 16 U.S.C. §811, prescribed as a condition of relicensing the construction of a fishway at Gorge Dam (or any of the other two dams in the Project) to enable the passage of migrating fish. Therefore, while the Relicensing Order conceded that "[a] short reach of the river below Gorge dam will continue to be dewatered, and the slight detriment to resident and anadromous fish will persist," the license was issued without any requirement for fish passageway.[4] Relicensing Order, 71 FERC at 61,535. Plaintiff, which was a party to the Fisheries Settlement Agreement, did not seek review of the Relicensing Order or otherwise appeal the terms of the license.

Defendants' 30-year license is scheduled to expire in 2025, and the reauthorization process has already begun, again involving numerous state and federal agencies and other

---

[4] FERC did "reserve[ its] authority to require fish passage in the future, should circumstances warrant." Relicensing Order, 71 FERC at 61,535.

ORDER GRANTING MOTION
TO DISMISS

- 4

stakeholders, including Plaintiff. *See* Study Plan Determination for the Skagit River Hydroelectric Project dated July 16, 2021, Request for Jud. Not., Dkt No. 12, Ex. 6. There is no dispute that the impact of the Gorge Dam and the entire Project on the habitat of salmon and other resident and anadromous fish in the Skagit River will be an issue central to the debate over conditions and issuance of a new license.

### C. Plaintiff's Complaint and Procedural History

Plaintiff asserts that the "presence and operation" of Defendants' dam, and in particular Defendants' failure to provide a fishway, violate the 1848 Act Establishing the Territorial Government of Oregon (the "1848 Establishing Act"), which provided, in part relevant here, that "the rivers and streams of water in said Territory of Oregon [including an area that would later become Washington State] in which salmon are found, or to which they resort, shall not be obstructed by dams or otherwise, unless such dams or obstructions are so constructed as to allow salmon to pass freely up and down such rivers and streams." ch. 177, 9 Stat. 323. Plaintiff also argues that the dam constitutes a nuisance, and violates the common law of Washington State. *Id*., ¶¶ 5.C., 5D. Plaintiff seeks equitable relief, including a declaration that Defendants are in violation of the law, and an injunction requiring Defendants to provide a means for migratory fish species to bypass the dam, or prohibiting Defendants "from maintaining such dam in its present condition." *Id*., ¶¶ 6.A.-6.D.

Plaintiff filed the operative Amended Complaint in the Skagit County Superior Court on July 26, 2021. Defendants removed the complaint to this Court. Plaintiff moved for remand, which Defendants opposed. On November 9, 2021, this Court ruled that Plaintiff's Supremacy Clause claim, asserted at ¶¶ 5.B. and 6.B. of its Amended Complaint, constituted a federal

ORDER GRANTING MOTION
TO DISMISS

- 5

question over which this Court had jurisdiction; and that in addition, several of Plaintiff's claims raised a "disputed, substantial federal issue" requiring interpretation of the 1848 Establishing Act. The Court also asserted supplemental jurisdiction over Plaintiff's remaining state-law claims, concluding they "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." *See* Order Denying Plaintiff's Motion for Remand, Dkt. No. 19.

### D. Defendants' Motion to Dismiss

Defendants' Motion to Dismiss challenges Plaintiff's claims on multiple fronts, starting with a threshold challenge to this Court's jurisdiction to hear those claims. Defendants characterize the claims as a grossly untimely appeal of FERC's 1995 Relicensing Order, which by statute must be made directly to the U.S. Court of Appeals "or not at all." Mot. to Dismiss at 11 (citing *City of Tacoma v. Taxpayers of Tacoma*, 357 U.S. 320, 336 (1958)). Invoking the prudential doctrine of "primary jurisdiction," Defendants also ask the Court to defer any ruling on these issues to FERC, which they argue have primary jurisdiction over the question of fish passage at the dams. *Id*. at 12-13.

On the merits, Defendants argue that the 1848 Establishing Act is no longer good law, as it was never incorporated into Washington, either when Washington became a territory distinct from Oregon, or upon its statehood. Defendants alternatively argue that even if that law was continued in force in Washington, it was repealed, on any of several possible occasions, both by the State of Washington and by the U.S. Congress. Regarding Plaintiff's state-law claims, including those brought under Washington nuisance and common law, Defendants argue they are both conflict- and field-preempted by the Federal Power Act, 16 U.S.C. §§ 791a, *et seq*., ("FPA").

ORDER GRANTING MOTION
TO DISMISS

- 6

Mot. to Dismiss at 12-15. On November 17, 2021, the Court heard oral argument on the Motion to Dismiss.

### III.   DISCUSSION

#### A. Standard on Motion to Dismiss Under Fed. R. Civ. P. 12(b)(1) For Lack of Jurisdiction

Federal Rule 12(b)(1) authorizes a party to move for dismissal for lack of subject matter jurisdiction. Under this rule, dismissal is appropriate "if the complaint, considered in its entirety, on its face fails to allege facts sufficient to establish subject matter jurisdiction." *In re Dynamic Random Access Memory Antitrust Litig.*, 546 F.3d 981, 984-85 (9th Cir. 2008). Once a defendant has invoked Fed. R. Civ. P. 12(b)(1) in a challenge to a court's competence to hear a claim, the plaintiff "bears the burden of establishing subject matter jurisdiction." *Id.*, 546 F.3d at 984; *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994) ("Federal courts are courts of limited jurisdiction.... It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction.") (citations omitted).

#### B. This Court Lacks Jurisdiction to Review Plaintiff's Challenge to the 1995 FERC License and Relicensing Order

Defendants' threshold challenge to this Court's jurisdiction relies on Section 313, the "exclusive jurisdiction" provision of the FPA, which provides, in relevant part:

> Any party to a proceeding under this chapter aggrieved by an order issued by the Commission in such proceeding may obtain a review of such order in the United States Court of Appeals for any circuit wherein the licensee or public utility to which the order relates is located or has its principal place of business, or in the United States Court of Appeals for the District of Columbia, by filing in such court, within sixty days after the order of the Commission upon the application for rehearing, a written petition praying that the order of the Commission be modified or set aside in whole or in part.... Upon the filing of such petition such court shall

ORDER GRANTING MOTION
TO DISMISS

- 7

> have jurisdiction, which upon the filing of the record with it shall be exclusive, to affirm, modify, or set aside such order in whole or in part.

16 U.S.C. § 825l (b). Over 60 years ago, the Supreme Court interpreted Section 313 to mean that appeal to the appropriate federal circuit court is the "the specific, complete and exclusive mode for judicial review of the Commission's orders." *City of Tacoma v. Taxpayers of Tacoma*, 357 U.S. 320, 336 (1958). The provision "necessarily preclude[s] *de novo* litigation between the parties of all issues inhering in the controversy, and all other modes of judicial review," and requires that "all objections to the order, to the license it directs to be issued, and to the legal competence of the licensee to execute its terms, must be made in the Court of Appeals or not at all." *Id.* at 336. Written in the broadest terms, *City of Tacoma* made clear that the exclusive jurisdiction provision deprives other forums of jurisdiction even for issues that were not raised but "could and should have been." *Id*. at 339 ("[E]ven if it might be thought that this issue was not raised in the Court of Appeals, it cannot be doubted that it could and should have been, for that was the court to which Congress had given 'exclusive jurisdiction to affirm, modify, or set aside' the Commission's order.").

Plaintiff does not dispute that Section 313 of the FPA would deprive this Court of jurisdiction over a direct challenge to a FERC order based on federal claims. Resp. Br. at 7 ("It is clear that in the Ninth Circuit, attempts to bring claims under other federal laws . . . must give way to the FPA where 'the practical effect of the action in district court is an assault on an important ingredient of the FERC license.'") (citing *Cal. Save Our Streams Council, Inc. v. Yuetter*, 887 F.2d 908, 912 (9th Cir. 1989)). Plaintiff argues, however, that this jurisdictional prescription does not apply to the claims in this case, because (1) the Ninth Circuit has not applied this provision to claims, like those in this case, that may be based on state law; and (2) Plaintiff's

ORDER GRANTING MOTION
TO DISMISS

- 8

claims, it argues, are "wholly collateral" to the FERC order, not "an assault on an important ingredient of the FERC license." Resp. Br. at 7 (citing *Yeutter*, 887 F.2d at 912). Plaintiff's argument fails on both points.

As to its first contention, Plaintiff apparently overlooks that the claims dismissed for lack of jurisdiction in the seminal case of *City of Tacoma* were brought under state law. *See* 357 U.S. at 331. Furthermore, the Ninth Circuit and other courts have unfailingly interpreted the FPA's exclusive jurisdiction clause, and functionally identical clauses in other federal statutes, as remarkably strict and broad, refusing to draw distinctions based on the substance or form of the claims asserted. *See, e.g., Yeutter*, 887 F.2d at 912; *see also Pub. Watchdogs v. S. California Edison Co., Inc.*, 984 F.3d 744, 766 (9th Cir. 2020) ("Like the plaintiffs in [*Yeutter*, plaintiffs here] cannot avoid the Hobbs Act's exclusive avenue of judicial review by artfully pleading its challenge to the 2015 License Amendments . . . [as a] public nuisance, or strict products liability claim."); *Otwell v. Alabama Power Co.*, 47 F.3d 1275, 1281 (11th Cir. 2014) ("Appellants cannot escape [16 U.S.C.] § 825l (b)'s strict judicial review provision by arguing that they are pursuing different claims and different relief than the parties before the FERC."), *aff'ing Otwell v. Alabama Power Co.*, 944 F. Supp. 2d 1134, 1154 (N.D. Ala. 2013) (acknowledging that while "there is an interplay between federal regulation of hydroelectric projects and state law property rights," "once an activity is exclusively regulated and sanctioned by a FERC license, an aggrieved party may not use state law tort as a vehicle to interfere with that sanctioned activity"); *Williams Nat. Gas Co. v. City of Oklahoma City*, 890 F.2d 255, 262 (10th Cir. 1989) ("[W]e see nothing in the substantive character of [plaintiff's] challenges to the FERC order that would exempt those arguments from the statutory appellate scheme."); *City of Rochester v. Bond*, 603 F.2d 927, 936

ORDER GRANTING MOTION
TO DISMISS

- 9

(D.C. Cir. 1979) ("The choice of forum is, as we have said, for Congress and we cannot imagine that Congress intended the exclusivity *vel non* of statutory review to depend on the substantive infirmity alleged."). The reasoning contained in these cases necessarily supports the conclusion that a challenge to a FERC action based on state law claims—that is, "*any claim* inhering in the controversy"—must be brought in the Court of Appeals, "or not at all." *City of Tacoma*, 357 U.S. at 336 (emphasis added). Plaintiff has not identified any precedent that would support drawing a distinction here between state and federal law claims.[5]

As to Plaintiff's second contention, it is immaterial for purposes of this Court's jurisdiction that Plaintiff's claims are not an explicit or direct challenge to FERC's authority or to the Relicensing Order itself. Cases since *City of Tacoma* have repeatedly invoked the exclusive jurisdiction provision as applying with notable breadth to "any issue inhering in the controversy." As one court put it, "[we] would be hard pressed to formulate a doctrine with a more expansive scope." *Williams Nat. Gas Co.*, 890 F.2d at 262. As noted above, in assessing whether the exclusive jurisdiction provision should apply, a court is to look not to the nature of the claims asserted, but to whether "the practical effect of the action in district court is an assault on an important ingredient of the FERC license." *Yeutter*, 887 F.2d at 912 (Courts of Appeals have exclusive jurisdiction over "questions arising under the FERC licenses."); *Kovac v. Wray*, 363 F. Supp. 3d 721, 741 (N.D. Tex. 2019) ("exclusive jurisdiction provisions [like Section 313] bar litigants from "requesting the District Court to enjoin action that is the outcome of the agency's order.") (citing *FCC v. ITT World Communications, Inc.*, 466 U.S. 463, 468 (1984)). Section 313

---

[5] In light of the clear and resolute pronouncements in these cases, Justice Harlan's observation that he did "not understand the Court to suggest that the Federal Power Act endowed the Commission and the Court of Appeals with authority to decide any issues of state law," in *dicta* in a concurring opinion, is simply not controlling.

ORDER GRANTING MOTION
TO DISMISS

- 10

even applies, as the Supreme Court originally held, to challenges "to the legal competence of the licensee to execute" the terms of the FERC license—precisely how the Court would characterize the claims in this case. *City of Tacoma*, 357 U.S. at 336; *see* Am. Compl., ¶¶ 5.A.-D. (asserting that "[t]he presence and operation of such dam by respondent . . . violate[]" state and federal statutory and constitutional law).

It is true that Section 313 might not bar a district court's review of issues that are "wholly collateral to a statute's review provisions and outside the agency's expertise." *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 212 (1994) (citation omitted). However, the question that Plaintiff has raised here—whether Defendants should be required to construct a fishway—is not merely tangentially or coincidentally related to the operation of the dam; it is one that Congress explicitly directed FERC to consider in the licensing of hydroelectric projects and furthermore, was *actually considered and explicitly rejected* in proceedings leading up to issuance of *this* Relicensing Order.[6] *See* 16 U.S.C. § 811 (FERC "shall require the construction, maintenance, and operation by a licensee at its own expense of . . . such fishways as may be prescribed by the Secretary of the Interior or the Secretary of Commerce, as appropriate."). As laid out in a separate, enumerated section of the Relicensing Order, titled "Fish Passage," FERC observed that the FPA

> states that the Commission shall require construction, maintenance, and operation by a licensee of such fishways as may be prescribed by the Secretary of Commerce or of the Interior. As parties to the Settlement Agreement, both Interior (FWS) and Commerce (NMFS) agreed (along with other parties to the Settlement Agreement) "that all issues concerning environmental impacts from relicensing of the Project, as currently constructed, are satisfactorily resolved by these Agreements." Neither agency prescribed a fishway or requested a reservation of fishway prescription

---

[6] In fact, while it does not appear that Plaintiff (or any other intervenor) availed itself of the procedure, the statute entitles "any party to the proceeding . . . to a determination on the record," and an "agency trial-type hearing of no more than 90 days, on any disputed issues of material fact with respect to such fishways." 16 U.S.C. § 811.

ORDER GRANTING MOTION
TO DISMISS

- 11

authority.

Relicensing Order, 71 FERC at 61,535. Plaintiff's analogy—arguing that an attempt to enforce a hypothetical state law that the dam be painted red would not be an attack on a FERC license— is compelling but inapt. *See* Resp. Br. at 6. It could hardly be argued in such a case that Section 313 would apply. Neither Congress nor FERC has prescribed what color the Gorge Dam should be painted; unlike an injunction requiring construction of a fishway, enforcement of a state law requiring the dam be painted red would therefore be "wholly collateral" to FERC's expertise. The analogy only serves to highlight by contrast how intertwined Plaintiff's claims are with the license in this case.

      Finally, the Court notes that in this case, the appropriately strict application of the FPA's exclusive jurisdiction provision is not unjust to the Plaintiff. The relicensing process, judging from the lengthy duration of the proceedings, the number of parties involved, and the complexity of the settlement agreements, as outlined in the Relicensing Order, was thorough and exhaustive, resulting in a "very complex and delicate settlement." Relicensing Order, 71 FERC at 61,532 ("The Settlement Agreement filed by the parties contains the resolution of a wide range of complex and conflicting areas of interest to the various parties, and is the product of several years of negotiations among these parties."). Plaintiff was a named intervenor and a party to negotiations over the relicensing of the Skagit River Project, and ultimately to the settlement agreement "purport[ing] to resolve all issues related to project operation, fisheries, wildlife" and other issues related to the Project." *Id*. at 61,527. It had actual knowledge of the contents of that agreement, and every opportunity to challenge them, if it had chosen, through the proper channels.

ORDER GRANTING MOTION
TO DISMISS

- 12

Furthermore, Plaintiff has an imminent opportunity once again to advance its position before FERC, as the end of the 30-year license term approaches, and proceedings related to relicensing the Project are underway. FERC and other interested parties will revisit whether fishways or other ameliorative measures should be included in the relicensing of the Project.[7] In the event Plaintiff's claims are not resolved to its satisfaction in the next licensing order, Plaintiff may attempt to advance claims asserted in this lawsuit in an appeal in the proper appellate forum. Conversely, requiring Defendants (not to mention FERC and the myriad other agencies and stakeholders party to the Relicensing Order) to revisit the terms set out in the 1995 license would impose on all parties a burden that Congress deliberately sought to relieve. *See Yeutter,* 887 F.2d at 912 ("After the license applicant had initially fought his way through the administrative proceedings, he would then have to grind through the district court and, almost certainly, through the appeal as of right to the circuit court. . . . Appellants' theory would resurrect the very problems that Congress sought to eliminate.").

Ultimately, granting the injunction Plaintiff seeks would prohibit the Gorge Dam from operating as the FERC license currently in place plainly allows and requires; the Court would be

---

[7] The Relicensing Order does not give a substantive explanation for why fishways were not prescribed in the 1995 license for the Skagit River Project, other than by a reference in FERC's Environmental Assessment, attached to the Relicensing Order, which opines that "[h]istorically, the upper reach of the Skagit River was not important for anadromous fishes. . . . Historical information indicates that, under pre-project conditions, the narrow canyon, high falls and extremely turbulent rapids in the Gorge reach of the river above Newhalem prevented anadromous fish from migrating much above the current locations of Gorge and Diablo dams." Relicensing Order, 71 FERC at 61,569. The science and public opinion concerning the preservation of salmon habitat may have advanced since these observations were made. *See* Study Plan Determination for the Skagit River Hydroelectric Project, Dkt. No. 12, Ex. 6 at App. B-28 (in responding to proposal regarding study of fish passage feasibility, "Skagit County states that City Light should not be the lead investigator in the fish passage study because it has spent many years and considerable resources undermining the idea that anadromous fish utilized the river upstream of the project's dams. Therefore, Skagit County asserts that 'it defies reason to suggest that Seattle should now lead and control what is supposed to be an objective analysis of that very question.' Accordingly, Skagit County requests that the Commission require the federal agencies and tribes to co-lead the study.").

ORDER GRANTING MOTION
TO DISMISS

- 13

saying that Defendants cannot do that which a FERC order explicitly says they can. It is difficult to imagine a challenge more "inescapably intertwined" with FERC's authority than that. Such questions must be answered in the U.S. Court of Appeals, "or not at all." *City of Tacoma*, 357 U.S. at 336.

## IV.  CONCLUSION

Because the Court concludes that it lacks jurisdiction to hear any of Plaintiff's claims, all of which "inhere in the controversy" concerning an explicit provision of the 1995 FERC Relicensing Order, the Court need not—indeed, lacks jurisdiction to—determine whether any of Plaintiff's claims would succeed on the merits. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). For the foregoing reasons, the Court hereby GRANTS Defendants' Motion to Dismiss.

DATED this 2nd day of December, 2021.

Barbara Jacobs Rothstein
U.S. District Court Judge